IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA


CITICORP CREDIT SERVICES, INC. (USA),  )
          )
         Plaintiff,      )
          )
   vs.         )
          )
ALASKA LAW OFFICES, INC.,     )
          )   No. 3:13-cv-0071-HRH
       Defendant.   )
_____)


O R D E R

Motions for Partial Summary Judgment

Plaintiff and defendant cross-move for summary judgment on defendant's counterclaim for additional compensation.[1] The cross-motions are opposed.[2] Oral argument was requested and has been heard. At oral argument, the court requested that the parties file supplemental affidavits as to whether the parties' prior agreements

_____

[1]Docket Nos. 20 & 22.

[2]Docket Nos. 29 & 31.

-1-

contained a provision that addressed further compensation if accounts were recalled.[3] The

parties have timely filed their supplemental affidavits.[4]

Facts

Plaintiff is Citicorp Credit Services, Inc. (USA). Defendant is Alaska Law Offices,

Inc.

Plaintiff engaged defendant to provide collection legal services for customer

accounts that were in default. The parties entered into a series of contracts, the last of

which was dated January 21, 2010. Although the 2010 Agreement provided that it would

"continue in full force and effect until terminated as provided" in Section 5 of the

agreement,[5] the parties executed an Amendment to the 2010 Agreement which limited the

term of the Agreement to December 31, 2012.[6] The Amendment to the Agreement only

changed the term of the 2010 Agreement. All other "[t]erms and conditions of the

Agreement ... remain[ed] unchanged and in full force and effect."[7]

---

[3]Docket No. 43.

[4]Docket Nos. 44, 47, 49 & 50.

[5]Attorney Collection Services Master Agreement at § 5.1, Exhibit A, Answer and Counterclaim, Docket No. 4.

[6]Amendment to the Attorney Collection Services Master Agreement at 1, Exhibit 3, Declaration of Jere Taylor in Support of Plaintiff's Motion for Partial Summary Judgment, Docket No. 21.

[7]Id.

The 2010 Agreement provided that "[a]s compensation for the Services, [plaintiff]

shall pay to [defendant] the fees set forth in a manner prescribed in Exhibit E to this

Agreement."[8]  Exhibit E provided that for collection litigation, defendant would be paid "a

contingent fee of nineteen percent (19%) of the sum of Gross Debt Collected, excluding

reimbursed Court Costs."[9]

The Remedies section of the 2010 Agreement provided that

> [e]xcept as otherwise expressly provided in this Agreement, all
> remedies in this Agreement are cumulative and in addition to
> (not in lieu of) any other remedies available to a Party at law or
> in equity.[10]

The 2010 Agreement's Modification clause provided that

> [t]he terms, conditions, covenants and other provisions of this
> Agreement may be modified, amended, supplemented or
> otherwise changed only by a written instrument (a written
> instrument shall not include e-mail or similar electronic
> transmissions and, as such, other than as expressly permitted
> as aforesaid, such electronic transmissions can not be used for
> such purpose) that specifically purports to do so and is
> physically executed by a duly authorized representative of
> each Party.  Certain exhibits, schedules, and addenda may be
> modified or updated by [plaintiff] providing notification of

---

[8]Attorney Collection Services Master Agreement at § 4.1, Exhibit A, Answer and Counterclaim, Docket No. 4.

[9]Exhibit E to Attorney Collection Services Master Agreement, Exhibit A, Answer and Counterclaim, Docket No. 4.

[10]Attorney Collection Services Master Agreement at § 16.2, Exhibit A, Answer and Counterclaim, Docket No. 4.

revised versions as provided in the specific exhibit, schedule, and addendum.[11]

The 2010 Agreement contains a survival clause that provided that certain sections of the Agreement shall continue in force and effect after the Agreement was terminated.[12] The survival clause further provided that "[a]ny additional provisions of this Agreement which by their sense and context are meant to survive expiration or earlier termination of this Agreement shall so survive."[13]

Attached to the 2010 Agreement were several exhibits. The Agreement provided that "[a]ll exhibits, schedules and addenda attached hereto shall be incorporated herein and shall be understood to be a part hereof as though included in the body of this Agreement."[14] Exhibit D to the Agreement was entitled the Attorney Work Standards, which set forth "the quality measurements, performance levels, and other standards" by which defendant was to render its services.[15] "The terms" in Exhibit D "may be subject to modifications as the Parties may annually agree, with such modifications being in writing

---

[11]Id. at § 17.1.

[12]Id. at § 17.15.

[13]Id.

[14]Id. at § 17.13.

[15]Id. at § 2.1.

and acknowledged by each of the Parties...."[16]  The detailed standards were provided to

defendant "under separate cover" and plaintiff could "update" the Standards "at any time

by providing notice electronically or by other means...."[17]  Exhibit D provided that "[a]ny

conflict ... between  an Exhibit and this Agreement shall be resolved by referring to the

most recent version of this Exhibit D."[18]

Section 3.11 of the parties' 2009 agreement was entitled "Not Exclusive Agreement"

and provided that "[n]otwithstanding any other section or provision of the Agreement,

prior to or after the termination of the Agreement, [plaintiff] may recall any Account for

any reason."[19]  Section 3.11 further provided that "[a]fter an Account is recalled by

[plaintiff], Law Firm will not be entitled to the contingent fee set forth in Section 5.1 of the

Agreement, except when any portion of that fee has been earned but not yet paid."[20]  The

---

[16]Exhibit D to Attorney Collection Services Master Agreement, Exhibit A, Answer and Counterclaim, Docket No. 4.

[17]Id.

[18]Id.

[19]Law Firm Agreement (effective Jan. 1, 2009) at § 3.11, SEALED Exhibit D, Docket No. 49.  The parties' 2007 and 2008 agreements contained similar provisions. 2007 Attorney Agreement at § 4.4, SEALED Exhibit A; 2008 Attorney Agreement at § 4.4, SEALED Exhibit C; Docket No. 49.

[20]2009 Law Firm Agreement at § 3.11, SEALED Exhibit D, Docket No. 49.  The parties' 2007 and 2008 agreements contained similar provisions. 2007 Attorney Agreement at § 4.4, SEALED Exhibit A; 2008 Attorney Agreement at § 4.4, SEALED Exhibit C; Docket No. 49.

2009 Agreement also contained a "Recalling Accounts" provision, as part of the Term and

Termination section (Section 6), which provided:

> In addition to the right to recall accounts granted to [plaintiff] in Section 3.11 herein, [plaintiff] may, in its discretion, recall any or all Accounts referred to Law Firm, including those reduced to judgment, whether dormant or not, as well as Accounts not reduced to judgment whether or not payments are being made by a Debtor, and, in its discretion, transfer all Accounts to another law firm. Law Firm shall not be entitled to the contingent fee specified in Section 5.1 hereof after an Account has been recalled for any reason, except when any portion of that fee has been earned but not yet paid.[21]

The 2009 Agreement had a limited term of one year.[22] In the event the agreement

expired, defendant was to "return to [plaintiff] all Accounts, whether or not reduced to

judgment[.]"[23] If plaintiff terminated the agreement for cause, the 2009 Agreement

provided that defendant "shall not be entitled to a fee or compensation on any Accounts

after the date the Agreement is terminated."[24]

---

[21]2009 Law Firm Agreement at § 6.5, SEALED Exhibit D, Docket No. 49. The 2007 and 2008 agreements contained similar provisions. 2007 Attorney Agreement at § 6.5, SEALED Exhibit A; 2008 Attorney Agreement at § 6.5, SEALED Exhibit D; Docket No. 49.

[22]2009 Law Firm Agreement at § 6.1, SEALED Exhibit D, Docket No. 49.

[23]Id. at § 6.4.

[24]Id. at § 6.3. The 2007 and 2008 agreements contained similar provisions. 2007 Attorney Agreement at § 6.3, SEALED Exhibit A; 2008 Attorney Agreement at § 6.3, SEALED Exhibit D; Docket No. 49.

The 2010 Agreement provided that either party could terminate the Agreement without cause by giving the other party thirty days notice.[25] In the case of such a termination for convenience, each party "remain[ed] responsible for its respective obligations with regard to actions, events, and Services received or rendered prior to the date such termination becomes effective."[26]

The 2010 Agreement provided that in the case of a breach of the Agreement, the non-breaching party was to give the other party notice and a 30-day opportunity to cure the breach.[27] If after the end of the thirty days, the breaching party had not cured the breach, then the Agreement was to be considered terminated for cause.[28] However, the 2010 Agreement provided that any termination for cause "shall not prejudice the rights of either [p]arty against the other. [Plaintiff] shall pay [defendant] the amount due for all work delivered and Services performed provided [plaintiff] does not have a dispute with [defendant] concerning such payment."[29] The 2010 Agreement also provided that "[u]pon

_____

[25]Attorney Collection Services Master Agreement at § 5.2, Exhibit A, Answer and Counterclaim, Docket No. 4.

[26]Id.

[27]Id. at § 5.3.

[28]Id.

[29]Id.

termination ... each Party shall promptly account for and pay to the other Party all amounts due under this Agreement...."[30]

The 2010 Agreement did not contain any provisions pertaining to the expiration of the Agreement, presumably because the 2010 Agreement, as originally drafted, was for an unlimited term. The 2010 Agreement also did not contain any provisions that addressed the recall of accounts. Plaintiff contends the recall of accounts provision was "inadvertently excluded from the 2010 version of Citi's Work Standards."[31] But, as set out above, in the parties' previous agreements, the provisions dealing with the recall of accounts were in the body of the agreements, not in the Attorney Work Standards. Rather than seeking to reform the 2010 Agreement to add a recall of accounts provision, plaintiff inserted a "recall provision" into the 2011 version of the Attorney Work Standards.

The "recall provision" in the 2011 Attorney Work Standards stated that

> [n]otwithstanding any other section or provision of the Agreement, Citi may recall or transfer to another Law Firm ... any or all Accounts for any reason, including those reduced to judgment, whether or not payments are being made on the Account.... Upon the sending (electronic or by other means) of a Recall Notification, Law Firm shall not be entitled to any fees, claims for payments, unjust enrichment claims or any other

---

[30]Id. at § 5.6.

[31]Supplemental Declaration of Jere Taylor [etc.] at 2, ¶ 7, Docket No. 30.

compensation claims including, without limitation, the contingent fee set forth in the Attorney Agreement.[32]

On October 14, 2011, Clayton Walker, Jr., defendant's managing partner, attested that he had "read, understands, and confirms that, Alaska Law Offices, Inc., is in reasonable compliance with the 'Citi Work Standards' version September 1, 2011 as delivered."[33]

Jere Taylor, plaintiff's Senior Attorney Manager, avers that "[i]n early 2013, [plaintiff] advised [defendant] that it would be recalling [its] remaining accounts because, among other reasons, the Agreement had expired, there was no extension and [defendant] continued its wholesale failure to comply with the Agreement."[34]  On March 28, 2013, plaintiff hand-delivered notification to defendant that it was recalling "the approximately 380 Citi accounts ... currently placed with the Alaska Law Offices, Inc. ... for collection."[35] The notification advised defendant that it had seven days in which to return all customer data and other information relating to the accounts.[36]

_____

[32]Exhibit 1 at 2-3, Taylor Declaration, Docket No. 21.

[33]Exhibit 2 at 2, Taylor Declaration, Docket No. 21.

[34]Taylor Declaration at 3, ¶ 10, Docket No. 21.  Defendant disputes that it was not complying with the Agreement.  But whether defendant was or was not complying is not material to the issue at hand.

[35]Exhibit 4 at 1, Taylor Declaration, Docket No. 21.

[36]Id.

The 380 accounts had been reduced to judgments and "these open judgments had a balance of $3,660,305."[37] Defendant contends that it "has already done the work to obtain the judgments, record the judgment[s] as a lien in the property records and protect the right to collect the judgment[s] by maintaining the records of efforts on collection."[38] Defendant contends that it is entitled to be paid for this work, even though plaintiff recalled the accounts. Plaintiff contends that it is only required to pay defendant for any amounts collected on the accounts, which it contends that it has already done.[39]

After receiving the recall notice, defendant refused to return any information to plaintiff until plaintiff "paid the quantum meruit value of the services performed on the 380 files."[40] Plaintiff refused to pay defendant any additional compensation and on April 26, 2013, commenced this action. Plaintiff's complaint asserts a claim for declaratory relief and a breach of contract claim. Defendant filed a counterclaim in which it seeks the additional compensation it believes plaintiff owes.

The parties now cross-move for summary judgment on defendant's counterclaim.

---

[37]Affidavit of Clayton Walker at 2, ¶ 6, Docket No. 24.

[38]Id. at ¶ 9.

[39]Supplemental Taylor Declaration at 3, ¶ 8, Docket No. 30.

[40]Walker Affidavit at 2, ¶ 8, Docket No. 24.

Discussion

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The initial burden is on the moving party to show that there is an absence of genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, then the non-moving party must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). In deciding a motion for summary judgment, the court views the evidence of the non-movant in the light most favorable to that party, and all justifiable inferences are also to be drawn in its favor. Id. at 255. "[T]he court's ultimate inquiry is to determine whether the specific facts set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987). "Where the parties file cross-motions for summary judgment, the court must consider each party's evidence, regardless under which motion the evidence is offered." Las Vegas Sands, LLC v. Nehme, 632 F.3d 526, 532 (9th Cir. 2011).

Texas law governs "all disputes and matters whatsoever arising under, in connection with, or incident to [the 2010] Agreement...."[41] In Texas, "[p]ublic policy

---

[41] Attorney Collection Services Master Agreement at § 17.10, Exhibit A, Answer and
(continued...)

strongly favors a client's freedom to employ a lawyer of his choosing and, except in some

instances where counsel is appointed, to discharge the lawyer during the representation

for any reason or no reason at all." Hoover Slovacek LLP v. Walton, 206 S.W.3d 557, 562

(Tex. 2006). "[I]f an attorney hired on a contingent-fee basis is discharged without cause

before the representation is completed, the attorney may seek compensation in quantum

meruit or in a suit to enforce the contract by collecting the fee from any damages the client

subsequently recovers." Id. at 561 (citing Mandell & Wright v. Thomas, 441 S.W.2d 841,

847 (Tex. 1969)). An attorney hired on a contingent-fee basis who is discharged with cause

may also "attempt to recover a fee for services rendered up to the time of discharge under

quantum meruit." Rocha v. Ahmad, 676 S.W.2d 149, 156 (Tex. Ct. App. 1984). "When both

parties assent to the [contingent-fee] contract's abandonment, an implied contract arises.

The measure of recovery for an implied contract is the reasonable value of the services

provided." Diaz v. Attorney General of State of Tex., 827 S.W.2d 19, 22-23 (Tex. Ct. App.

1992). Parties may contract around a contingent-fee attorney's right to recover in quantum

meruit as long as the provision doing so is not unconscionable under Texas law. Hoover

Slovacek LLP, 206 S.W.3d at 562-63.

Defendant argues that regardless whether its contract with plaintiff was terminated

with or without cause or expired on its own terms and regardless whether plaintiff's recall

---

[41](...continued)
Counterclaim, Docket No. 4.

notification was with or without cause, it is entitled to recover in quantum meruit for the

work it has done on the 380 recalled accounts.  Resolution of defendant's contention that

it is entitled to recover in quantum meruit requires interpretation of the Agreement.

"When interpreting a contract," the court's "primary concern is to ascertain and give effect

to the written expression of the parties' intent."  NuStar Energy, L.P. v. Diamond Offshore

Co., 402 S.W.3d 461, 465 (Tex. Ct. App. 2013).  "The parties' intent is governed by what is

written in the contract[.]"  Id.  Terms are given "their plain and ordinary meaning unless

the contract indicates that the parties intended a different meaning."  Id. at 466.  "If a

contract is not ambiguous, courts must enforce it as written without considering parol

evidence for the purpose of creating an ambiguity or giving the contract 'a meaning

different from that which its language imports.'"  Id. (quoting David J. Sacks, P.C. v.

Haden, 266 S.W.3d 447, 450 (Tex. 2008)).  The court "determine[s] whether a contract is

ambiguous by looking to the contract as a whole in light of the circumstances present when

the parties executed it."  Id.  "The contract is unambiguous if it can be given a certain or

definite meaning as a matter of law."  Id.

There can be no dispute that if the "recall provision"[42] became a term of the 2010

Agreement, it would limit defendant's right to recover in quantum meruit if plaintiff recalls

any of its accounts.  There is nothing ambiguous about the "recall provision."  It plainly

_____

[42]Exhibit 1 at 2-3, Taylor Declaration, Docket No. 21.

states that if plaintiff recalls any accounts, defendant will not be entitled to any fees or compensation for any work done in connection with the recalled accounts.

However, defendant argues that the 2010 Agreement contemplates that the attorney will be able to recover further compensation upon termination of the contract, even if the attorney may not be able to recover any contingent fees. Section 5.2 of the 2010 Agreement, which governs termination for convenience, provides that "[e]ach Party shall remain responsible for its respective obligations with regard to actions, events, and Services received or rendered prior to the date such termination became effective."[43] Section 5.3, which governs termination for cause, provides that plaintiff "shall pay [defendant] the amount due for all work delivered and Services performed...."[44] And, Section 5.7 provides that "[t]he obligations imposed by this Section 5 shall survive the termination of this Agreement."[45] Defendant argues that these provisions clearly show that the parties intended that they would fulfill their outstanding obligations to each other even if the Agreement were terminated. And, one of those obligations, according to defendant, is that plaintiff would pay defendant for the work already done on the recalled accounts.

---

[43]Attorney Collection Services Master Agreement at § 5.2, Exhibit A, Answer and Counterclaim, Docket No. 4.

[44]Id. at § 5.3.

[45]Id. at § 5.7.

Defendant's arguments about what compensation the attorney may be able to collect if the 2010 Agreement were terminated are largely inapplicable here because the 2010 Agreement was not terminated, but rather expired on its own terms. Although defendant contends that plaintiff improperly terminated the Agreement, there is no evidence to support this contention. There is no evidence that plaintiff provided defendant with the notice required for a termination with cause or that it gave defendant an opportunity to cure any alleged breach. There is also no evidence that either party provided the notice required for a termination of convenience. The Amendment to the 2010 Agreement that the parties executed provided that the agreement would continue to be in force and effect until December 31, 2012. Because the parties did nothing to extend that term, the 2010 Agreement expired on its own terms on December 31, 2012. Section 5 of the 2010 Agreement was silent as to the parties' obligations if the Agreement expired.

Defendant next argues that the 2010 Agreement, rather than limiting its right to recover in quantum meruit, expressly preserved its equitable and legal remedies. Defendant points to Section 16.2 which provides that "[e]xcept as otherwise expressly provided in this Agreement, all remedies in this Agreement are cumulative and in addition to (not in lieu of) any other remedies available to a Party at law or in equity."[46] Defendant argues that this provision demonstrates the parties' intent that defendant, as the service

_____

[46]Id. at § 16.2.

provider, upon termination of the 2010 Agreement, would be entitled to compensation for legal work performed on open accounts.

Plaintiff argues that defendant is ignoring the "[e]xcept as otherwise expressly provided in this Agreement" language in Section 16.2. Plaintiff contends that the "recall provision" expressly provides that defendant is not entitled to further compensation if plaintiff recalls any accounts and thus Section 16.2 does not demonstrate that the parties intended that defendant would have a right to recover in quantum meruit on accounts plaintiff recalls.

The question here is whether the "recall provision" ever became a part of the 2010 Agreement. Section 17.1 of the 2010 Agreement provides that the Agreement's terms, conditions, and provisions could only be modified in writing. But, it also provides that "[c]ertain exhibits, schedules, and addenda may be modified or updated by [plaintiff] providing notification of revised versions as provided in the specific exhibit, schedule, and addendum."[47] Exhibit D, which incorporates the Attorney Work Standards into the Agreement, provides that plaintiff "may update" the standards "at any time by providing notice (electronically or by other means) to [defendant] of updates to the Attorney Work Standards."[48] Thus, plaintiff argues that it could unilaterally modify the Attorney Work

---

[47]Id.

[48]Exhibit D to Attorney Collection Services Master Agreement, Exhibit A, Answer
(continued...)

Standards by providing notice to defendant, which is what it did in 2011, as evidenced by the attestation that Walker signed.

The problem with plaintiff's argument is that the "recall provision" was not an attorney work standard. In the parties' prior agreements, the "recall of accounts" provision was in the Term and Termination section of the agreement. It was not in the attorney work standard. When it inserted the "recall provision" into the 2011 Attorney Work Standards, plaintiff was not "updating" the Attorney Work Standards. It was adding a material term about compensation to the parties' agreement. In order to modify, amend, supplement or change the terms of the 2010 Agreement, Section 17.1 of the 2010 Agreement expressly required that both parties "physically execute" a written agreement that "specifically purports" to make such changes.[49]

There was no written agreement to modify the 2010 Agreement to include the "recall provision." The attestation that Walker signed in 2011 cannot constitute such a written agreement because it does not "specifically purport" to modify the Agreement and in fact

---

[48](...continued)
and Counterclaim, Docket No. 4.

[49]Attorney Collection Services Master Agreement at § 17.1, Exhibit A, Answer and Counterclaim, Docket No. 4. Exhibit D also provides that modifications to the terms in Exhibit D are to be "in writing and acknowledged by each of the Parties hereto." Exhibit D to Attorney Collection Services Master Agreement, Exhibit A, Answer and Counterclaim, Docket No. 4.

does not even mention the Agreement or cite to any portion of the Agreement.[50]  Rather,

the attestation primarily acknowledges that defendant was in compliance with the 2011

Attorney Work Standards.

Because there was no written agreement, the "recall provision" did not become part

of the 2010 Agreement   Thus, defendant is not precluded from recovering in quantum

meruit for its work on the recalled accounts.

### Conclusion

Defendant's motion for partial summary judgment[51] is granted, and plaintiff's

motion for partial summary judgment[52] is denied.  Counsel shall confer and respond to the

court's May 7, 2013 minute order[53] on or before March 10, 2014.  Based on that response,

the court will enter a scheduling and planning order for the completion of pretrial

development of this case.

DATED at Anchorage, Alaska, this 28th day of February, 2014.

/s/ H. Russel Holland
United States District Judge

---

[50]Exhibit 2 at 1, Taylor Declaration, Docket No. 21.

[51]Docket No. 22.

[52]Docket No. 20.

[53]Docket No. 5.